B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Noreen Wiscovitch, Chapter 7 Trustee on<br>Behalf of the Bankruptcy Estate of Fiddler,<br>Gonzalez & Rodriguez, PSC | DEFENDANTS<br>Oriental Bank and Trust<br>ABC Insurance |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Javier Vilariño<br>Vilarino & Associates LLC<br>PO Box 9022515, San Juan, PR 00902<br>Tel. 787-565-9894 | ATTORNEYS (If Known) |

| PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☒ Other<br>☐ Trustee |
|---|---|

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

11 U.S.C. §§ 105(a), 362, 363(p)(2), 502,506,541,542,544,547,548,550; FRBP 3007 and 7001

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☑ 11-Recovery of money/property - §542 turnover of property
- ☑ 12-Recovery of money/property - §547 preference
- ☑ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
      actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

      **(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
      (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☐ 02-Other (e.g. other actions that would have been brought in state court
      if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $          $14,431,475.90 |

Other Relief Sought

Turnover of property of the estate

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Fiddler, Gonzalez & Rodriguez, PSC | BANKRUPTCY CASE NO.<br>17-03403(MCF) | |
| DISTRICT IN WHICH CASE IS PENDING<br>San Juan | DIVISION OFFICE | NAME OF JUDGE<br>Hon. Mildred Caban |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Javier Vilariño | | |
| DATE<br><br>May 15, 2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Javier Vilariño | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In Re: | Bankruptcy Case: 17-03403-(MCF) |
| FIDDLER, GONZALEZ & RODRIGUEZ, PSC | Chapter 7 |
| Debtor. | |
| **FIDDLER, GONZALEZ & RODRIGUEZ, PSC** | **Adv. Proc. No.:** _____ |
| **REPRESENTED BY NOREEN WISCOVITCH, CHAPTER 7 TRUSTEE** | Re: Injunction, Objection to Claim, Declaratory Judgment for Determination of Validity, Priority, and Extent of Lien, Subordination of Claim, Willful Violation of the Automatic Stay Pursuant to:11 U.S.C. §§ 105(a), 362, 363(p)(2), 502, 506, 541, 542, 544, 547,548, 549, 550; FRBP 3007, and 7001. |
| **Plaintiff** | |
| **Vs.** | |
| **ORIENTAL BANK AND TRUST, ABC INSURANCE** | |
| **Defendant.** | |

### COMPLAINT AND OBJECTION TO ALLOWANCE OF CLAIM

TO THE HONORABLE MILDRED CABAN FLORES,
UNITED STATES CHIEF BANKRUPTCY JUDGE:

**COMES NOW**, by counsel, the duly appointed and acting Chapter 7 Trustee of the Bankruptcy Estate of Fiddler, Gonzalez & Rodriguez, P.S.C., Noreen Wiscovitch-Rentas, who states, alleges, and prays as follows:

### I.     THE PARTIES

The Plaintiff, NOREEN WISCOVITCH-RENTAS (the "Trustee" or "Plaintiff"), the duly appointed and acting Chapter 7 trustee of the Bankruptcy Estate of the Debtor, Fiddler Gonzalez & Rodriguez, PSC. ("Fiddler" or the "Debtor")

The Defendant, Oriental Bank and Trust (the "Bank", "Oriental" or "Defendant") is a commercial banking institution incorporated under the laws of the Commonwealth of Puerto Rico.

1

Upon information and belief, Defendant is an FDIC-insured institution, has offices and branches in the Commonwealth of Puerto Rico, and is engaged in substantial and not isolated commercial activities within the Commonwealth of Puerto Rico. Defendant has appeared in the main case through counsel, has sought affirmative relief from this Court, has filed a proof of claim, and has acknowledged this Court's *in personam* jurisdiction.

ABC Insurance Company is included as a nominal party for the identification of the insurance policy and company servicing the Bank and which will be substituted as a Defendant.

## II.        JURISDICTION AND VENUE

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§1334 and 157(a) and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. §157(b). Venue is proper pursuant 28 U.S.C. §1409(a). This adversary proceeding is brought pursuant to FRBP 7001 and §§ 105(a), 362, 363(p)(2), 502, 506, 541, 542, 544, 547,548, 549, and 550 of Title 11, United States Code.

## III.       FACTUAL BACKGROUND

1.      Fiddler was formed with the express business purpose of becoming the first full-service law firm in Puerto Rico, at a time when the island's economy was based largely on agriculture, mainly sugar.  Over the decades, Puerto Rico underwent a rapid development into an industrialized economy, which fueled Fiddler's growth and reputation as a legal powerhouse. Indeed, the largest multi-party, multi-jurisdictional damages litigation related to Puerto Rico, were claimed to have been successfully handled by Fiddler attorneys.

2.      Throughout the years, Fiddler gained a reputation for excellence, with former attorneys at the firm obtaining judicial appointments on the Puerto Rico Supreme Court, the U.S.

2

Bankruptcy Court for the District of Puerto Rico, the U.S. District Court for the District of Puerto Rico, the U.S. Court of Appeals for the First Circuit along with other important governmental appointments and positions.  Private practice attorneys that departed the firm likewise flourished, going to work for prestigious international law firms or forming their own law firms

3.      Throughout its history, Fiddler had financing facilities with various banking institutions. More recently and prior to 2014, it had a long-lasting amicable banking relationship with Banco Popular of Puerto Rico ("Banco Popular") which provided a $2 million secured credit facility with collateral in the form of personal guarantees from Fiddler's shareholders for the full amount of its indebtedness.

4.      Debtor's operations were anchored in what was formerly known as the BBVA Building. Before the summer of 2012, Banco Bilbao Viscaya Argentaria ("BBVA") was both Debtor's largest client and Debtor's landlord. The relationship between BBVA and Debtor was one of respect and professionalism; as one of the Debtor's largest clients, both entities had established a rapport were both entities worked together to protect each other's interests.

5.       By the summer of 2012, Oriental purchased the assets of BBVA and the Debtor continued providing legal services to their active foreclosure department. During that time, Debtor controlled the vast majority of the legal work that fit Oriental's needs as the successor of BBVA.

6.      After Oriental acquired BBVA's assets, Oriental's flow of referral of matters to the Debtor started to diminish. To strengthen the relationship between Oriental and BBVA, Debtor's management made the business decision and sought that it was proper to terminate the lender relationship with Banco Popular and commence a new lender relationship with Oriental.

7.      On February 27, 2014, Debtor entered into a substantial commercial banking relationship with Oriental by executing a loan agreement (the "2014 Loan Agreement") comprised

of a revolving line of credit for $2 million. The loan facility entered into between the parties did not include the personal guarantees that Banco Popular had as additional collateral.

8.     On May 22, 2014, Debtor transferred the bank accounts held at Banco Popular to Oriental. By then, Oriental was still one of Debtor's largest client.

9.     During the next two years, the volume of work managed for Oriental decreased as the former BBVA cases were resolved. In the meantime, Oriental's rhythm of new referrals continuously decreased as well. The Debtor was also having its own internal management conflicts which triggered severe liquidity problems that would drive any corporation into a deepening insolvency.

10.     Since the execution of the 2014 Loan Agreement, the Debtor's relationship with Oriental was rapidly deteriorating: as a landlord, Oriental would not negotiate new terms and conditions for the leases despite the shareholders requests; as a client, Oriental would not refer significant new legal matters; and as a lender, Oriental realized it needed control. In hindsight, Oriental's thirst for control was motivated by its desire to move its operations to the space Debtor occupied in the building; which ultimately occurred.

11.     On August 4, 2016, Oriental proposed the creation of an "asset based" line of credit with the account receivables as collateral in the amount of $1,500,000.00 and a term loan of $500.000.00. On September 1, 2016, Oriental issued a Commitment Letter with the constitution of a concentrating account in which all the monies received by Debtor would pool to cure the balances due on the revolving line of credit.

12.     On September 30, 2016, Debtor executed a Securities Agreement with Oriental consisting of a $500,000 term loan and a $1,500,000 revolving "asset based" line of credit (together the "2016 Credit Facility").

4

13.     Given that Oriental had all of Debtor's financial data in its possession and given its status as a sophisticated lender, Oriental knew or should have known that Debtor had entered the zone of insolvency and that further collateral was required in order to guarantee repayment. Simply put, Debtor had no financial capacity to keep the ratios percentage under the line of credit and perform under the 2016 Credit Facility. Notwithstanding that both, Debtor and Oriental (the "Parties") knew of this patent lack of capacity to comply under the 2016 Credit Facility, the Parties went forward and executed the agreement.

14.     It is important to note, that two months after the execution of the agreement, the Debtor surrendered leased space the Bank. The fifth floor was surrendered. However, this did not alleviate the Debtor's financial condition because the Bank imposed penalties on a monthly basis.

15.     Three months after the execution of the 2016 Credit Facility,  Oriental informed the Debtor that the asset-based line of credit had a deficit which required a lump sum payment of $407,500.00 immediately. This deficit was apparently caused by an error by the Bank on the calculation in the formula for the "asset based" line of credit.

16.     Knowing of Debtor's apparent and deepening insolvency, Oriental  applied duress to trigger the personal guarantees from the shareholders that they had let go under the 2004 Loan Agreement.

17.     On March 23, 2017, Oriental limited Debtor's access to its bank accounts and froze its funds. The Bank's actions triggered multiple checks to be returned as insufficient and created a havoc in Debtor's economically weaken  operation.

18.     Oriental, through its officials, asserted that if the personal guarantee agreements were not executed, then the line of credit would remain frozen.

19.     By March 24, 2017, Oriental insisted on the deficiency of the line of credit and continued to press Debtor to provide additional collateral and guarantees of payment. At that time, internal conflicts in the Debtor's management and operations had created severe liquidity problems that affected Debtor's capacity to provide more collateral. The shareholder's plead for a waiver of the technical default under the defective line of credit but the request were immediately rejected.

20.     On April 5, 2017, Oriental was circulating a draft of the personal guarantees of shareholders. The document did not reflect the agreements reached by the shareholders with Oriental officials, Mr. Patrick Hagerty and Mrs. Beatriz Rivera. The letter circulated by Oriental extended personal guarantees to obligations not subject to the 2016 Credit Facility; it included also issues with Oriental as a landlord under the Lease Agreement. Therefore, guarantees would increase nearly to $8 million. In addition, subordination could be bypassed, and Oriental could seek collection jointly and severally against the shareholders.

21.     On April 26, 2017, the Board of Directors met to approve resolutions for Debtor's dissolution. Among the motivating factors were, Debtor's historical insolvency, lack of clientele, Oriental's blockage to the accounts and line of credit and the refusal to extend new terms and conditions on the leases.

22.     By May 5, 2017, Oriental called ar technical default on the line of credit and term loan. The events of default notified were (1) lack of audited financial statements and tax returns and (2) failure to comply with Debt Coverage Ratio. No actual lack of payment was included as a reason for the default.

23.     By May 12, 2017, Oriental, had notified its foreclosure on Debtor's account receivables and effectively foreclosed in the amount of $916,216.59.

6

24.     On May 16, 2017 (the "Petition Date"), Debtor sought bankruptcy relief through the filing of the captioned voluntary petition under the provisions of Chapter 7 of the Bankruptcy Code. On even date, the appearing Trustee was duly appointed in the captioned case by this Honorable Court.

25.     On August 15, 2017, Oriental filed amended claim #42-2 (the "Claim"). The Bank claimed a total of $1,210,252.97, secured with an alleged lien on accounts receivables of $885,547.65 and an alleged unsecured portion of $324,705.32.  The Claim does not reflect the pre-petition foreclosure of the bank's security interest. The Claim should be allowed as an unsecured deficiency claim.

26.     After the filing of the Bankruptcy petition, the Bank continued its unreasonableness and has filed every remedy available to a creditor, whether it applies or not, to harass and affect the administration of the bankruptcy estate.

27.     Through the life of the captioned case, Oriental has forced the estate to incur in excessive legal fees given their vexatious and bad faith litigation by filing non-related remedies to distract the Trustee from the proper administration of the Bankruptcy Estate:

   a.  On June 15, 2017, Oriental Bank and Trust (the "Bank" or "Oriental") filed a motion for relief from stay pursuant to Sections 362(d)(1) and 362(d)(2) of the Bankruptcy Code alleging the Bank's enforceable right of set off, a lien over the Debtor's account's receivables, and the lack of interest of the estate in such funds. [Dkt. 48]
   b.  On June 21, 2017, Oriental filed a motion to compel the abandonment of the accounts receivables. [Dkt. 56]
   c.  On August 2, 2017, Oriental filed an Opposition to Motion for Leave to Deposit Funds. [Dkt. 88]
   d.  On August 29, 2017, Oriental served the Estate with a subpoena for production of documents. [Dkt.116]
   e.  On August 31, 2017, Oriental filed a Motion for Allowance of Administrative Rent Payment. [Dkt. 118]
   f.  On December 7, 2017, Oriental filed a Motion opposing to a Trustee's request for the continuance of a hearing. [Dkt.184]

g. On January 18, 2018, Oriental filed a two (2) Motions for Summary Judgment. [Dkt. 213 and 216].
h. On that same date, Oriental filed a Motion to Reject Lease or Executory Contract. [Dkt. 214]
i. On February 6, 2018, Oriental filed a Motion to Prohibit the use of Cash Collateral. [Dkt. 249]
j. On August 9, 2018, Oriental opposed to a Trustee's Motion for Extension of Time [Dkt. 357 & 358]
k. On that same day, Oriental filed an Opposition to Motion for Leave to Deposit Funds. [Dkt. 362]
l. On January 24, 2019, Oriental filed a Motion Opposing the use of Estate funds for Adversary Proceedings filing fees. [Dkt. 393]

28.     In its multiple, excessive motions, Oriental flagrantly admits that it exercises control over property of the estate in clear violation of the automatic stay[1].

29.     Furthermore, after the abandonment by the  Trustee of office space occupied by Debtor in the Oriental building, Oriental moved its corporate operations to the office space formerly occupied, in Floors 5, 6 and 7. This post-petition fact attests to Oriental's lack of good faith in its dealing with the Debtor pre-petition, and this fact clearly depicts Oriental's intention to evict the Debtor at all costs, to move its operation to the building.

30.     In addition, during discovery, the Trustee became aware that the calculation of the rented space charged to Debtor throughout their entire relationship with Oriental had a material miscalculation of leased space because 30 percent of the square footage charged was for space not physically occupied by the Debtor. Upon information, the leased space charged to the Debtor was calculated to include space outside of the office's windows, in the façade of the building, where no possible tenant operation could be established.

31.     The sum of all these facts, attest that Oriental was not dealing in good faith, as such, Oriental's claim should be equitably subordinated to those of the general unsecured creditors.

---

[1] Defendant admitted being in possession of and exercising control over $220,353.35 in an account in the name of the Debtor (the "Withheld Funds"). [Bankruptcy Case No. 17-03403; Dkt. 48, P. 3, ¶ 8]

32.    In addition, it is undisputed that Oriental had a clear depiction of the Debtor's financial condition when it enacted the "asset based" revolving line of credit under the 2016 Loan facility. In fact, it is undisputed that the Debtor forwarded periodical financial statements to Oriental.

33.    Based on the financial data available to them, they knew or should have known that the Debtor was insolvent, that Oriental received more in payments in the line of credit and as rent payments, that it would have received if the Debtor had filed its bankruptcy petition.

34.    The Debtor did not receive reasonably equivalent value for the 4-Year Transfers, and was insolvent or otherwise became insolvent as a result of the 4-Year Transfers, and/or the Debtor knew or should have known that it would incur debts beyond its ability to pay as such debts matured.

35.    Alternatively, the Debtor made the 4-Year Transfers with an actual intent to hinder or delay creditors, and Defendant was not a good faith transferee.

36.    Pursuant to 11 U.S.C. §§ 547 and 550, the Trustee is entitled to avoid and recover from Defendant the value of the property transferred for the benefit of the bankruptcy estate.

37.    The Debtor received less than a reasonably equivalent value in exchange for transfers during the two (2) years prior to the filing of the petition.

38.    Debtor was insolvent on the date such transfers occurred.

39.    Pursuant to 11 U.S.C. §548, the Trustee is entitled to avoid and recover from Defendant the value of the property transferred for the benefit of the bankruptcy estate.

## COUNT I– AVOIDANCE OF PREFERENTIAL PAYMENTS PURSUANT TO 11 U.S.C. §§ 547 & 550

40.    Plaintiff repeats and reaffirm each of the allegations contained above, as if fully set forth herein at length.

41.     The Debtor transferred significant amounts of funds to the Defendant in prejudice of the Debtor's unsecured creditors in the payment of the line of credit in an amount as depicted in Exhibit A.

42.     The Debtor transferred significant amounts of funds to the Defendant in prejudice of Debtor's unsecured creditors in rental payments in an amount as depicted in Exhibit B.

43.     Pursuant to 11 U.S.C. § 547, the Trustee may also seek to avoid any transfer of an interest of the debtor in property — (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; 4) made —. . . between ninety (90) days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and (5) that enables such creditor to receive more than such creditor would receive if — (A) the case were a case under chapter 7 of this title;  (B) the transfer had not been made; and  (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

44.     Here, the rental payments were calculated and included a 30% surplus not suitable for tenant occupation. The Debtor did not receive reasonably equivalent value for the transfers and was insolvent or otherwise became insolvent as a result of the transfers, and/or the Debtor knew or should have known that it would incur debts beyond its ability to pay as such debts matured. Oriental lacks good faith.

45.     Alternatively, the Debtor made numerous transfers with an actual intent to hinder or delay creditors, and Defendant was not a good faith transferee. [*See* Exhibit A]

46.     Pursuant to 11 U.S.C. §§ 547 and 550, the Trustee is entitled to avoid and recover from Defendant the value of the property transferred for the benefit of the bankruptcy estate.

**WHEREFORE**, in accordance with 11 U.S.C. §§ 547 and 550, the Trustee demands

judgment against Defendant as follows: (i) determining that the transfers are preferential

payments; (ii) entering judgment against Defendant for the value of the transfers, plus interest and

costs of suit; (iii) entering judgment against Defendant avoiding the transfers; (iv) disallowing any

claim Defendant may have against the Debtor's estate unless and until such time as the amounts

asserted hereunder are paid as provided in 11 U.S.C. § 502(d), subject to other objections thereto;

and (v) for any other relief the Court deems just and proper.

<u>**COUNT II - AVOIDANCE OF TRANSFERS**</u>
<u>**PURSUANT TO 11 U.S.C. § 548**</u>

47.     Plaintiff repeats and reaffirm each of the allegations contained above, as if fully set

forth herein at length.

48.     The Debtor transferred significant amounts of funds to the Defendant in prejudice

of the Debtor's unsecured creditors in the payment of the line of credit in an amount no less than

$7,543,785.34 [*See* Exhibit A]

49.     The Debtor transferred significant amounts of funds to the Defendant in prejudice

of Debtor's unsecured creditors in rental payments in an amount no less than $5,823,243.07. [*See*

Exhibit B]

50.     Oriental received transfers of funds which were part of the property of the Debtor.

51.     Said payments were made while the Debtor was insolvent or became insolvent as a

consequence of said transfers.

52.     Said payments or transfers included penalties, charges and amounts not owed,

without any consideration in return.

53.     Oriental received such transfers with the actual intent to hinder or delay Debtor's

unsecured creditors.

54.     This constitutes an avoidable transfer as defined by the Bankruptcy Code and is avoidable pursuant to 11 U.S.C. § 548.

55.     Pursuant to 11 U.S.C. § 548, the Trustee is entitled to avoid and recover from Defendant the value of the property transferred for the benefit of the bankruptcy estate.

**WHEREFORE**, in in accordance with 11 U.S.C. §§ 548, the Trustee demands judgment against Defendant as follows: (i) determining that the transfers during the two (2) prior to the filing of the petition are avoidable; (ii) entering judgment against Defendant for the value of the transfers, plus interest and costs of suit; (iii) entering judgment against Defendant avoiding the transfers; (iv) disallowing any claim Defendant may have against the Debtor's estate unless and until such time as the amounts asserted hereunder are paid as provided in 11 U.S.C. § 502(d), subject to other objections thereto; and (v) for any other relief the Court deems just and proper.

## COUNT III– RECISSION OF TRANSFERS PURSUANT TO
## 11 U.S.C. § 544 (b) AND ART. 1243(3) OF PUERTO RICO'S CIVIL CODE

56.     Plaintiff repeats and reaffirm each of the allegations contained above, as if fully set forth herein at length.

57.     The Debtor transferred significant amounts of funds to the Defendant in prejudice of the Debtor's unsecured creditors in the payment of the line of credit in an amount no less than $7,543,785.34 [*See* Exhibit A]

58.     The Debtor transferred significant amounts of funds to the Defendant in prejudice of Debtor's unsecured creditors in rental payments in an amount no less than $5,823,243.07. [*See* Exhibit B]

59.     Pursuant to Section 544(b) of the Bankruptcy Code, a trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable state law by a creditor holding an unsecured claim that is allowable

under Section 502 of this title or that is not allowable only under Section 502(e) of this title. 11
U.S.C. § 544(b).

60.    Article 1227 of Puerto Rico's Civil Code provides that "contracts without
consideration or with an illicit one have no effect whatsoever. A consideration is illicit when it is
contrary to law and good morals." P.R. Laws Ann. tit. 31 § 3432.

61.    Article 1228 of Puerto Rico's Civil Code states that inadequate or a complete lack
of "consideration in contracts shall render them void" P.R. Laws Ann. tit. 31 § 3433.

62.    Transactions, like the ones at issue in this case, "where a party alienates property
without valuable consideration," are presumed to be avoidable transfers. Santiago v. Santiago, 731
F. Supp. 2d 202 (D.P.R. 2010) citing Simcox v. San Juan Shipyard, Inc., 754 F.2d 430, 442 (1st
Cir. 1985) (citing P.R. Laws Ann. tit. 31 § 3498 (1969)).

63.    Under Puerto Rico law these types of acts subject a contract to rescission.
McCulloch v. Malavé Vélez, 380 F. Supp.2d 46, 51 (D.P.R.2005); see United States v. García, 532
F. Supp. 325, 333 (D.P.R.1981). P.R. Laws Ann. tit. 31 § 3432.

64.    Article 1243(3) of Puerto Rico's Civil Code provides for the rescission of contracts
made in violation of the rights of creditors, when creditors cannot recover what is due to them
through any other means. P.R. Laws Ann. tit. 31 § 3492.

65.    Pursuant to Article 1249 of the Puerto Rico Civil Code, contracts by virtue of which
the debtor alienates property, through a gratuitous conveyance (no consideration), are presumed
to be avoidable transfers. P.R. Laws Ann. tit. 31 § 3498

66.    Pursuant to Article 1251 of the Puerto Rico Civil Code, a cause of action to request
the rescission of contracts has a statute of limitations of four years. P.R. Laws Ann. tit. 31 § 3512.

67.     The transfers are avoidable as being made without reasonably equivalent value while the Debtor was insolvent or otherwise unable to pay its debts as they matured, all to the detriment of the Debtor's estate and its creditors.

68.     The transfers are null and void in accordance with P.R. Laws Ann. tit. 31 § 3432. In the alternative, the transfers are avoidable in accordance with P.R. Laws Ann. tit. 31 § 3433.

69.     The transfers constitute a null and void contract under Puerto Rico law, and are therefore all avoidable pursuant to 11 U.S.C. § 544.

70.     At all times material to this action, creditors existed that could have avoided the transfers as evidenced by the proof of claim register maintained by the Clerk of the Court for the and on behalf of the estate of the Debtor.

71.     Pursuant to 11 U.S.C. §§ 544 and 550, the Trustee is entitled to avoid and recover from Defendant the value of the property transferred as shown in Exhibit A & B for the benefit of the bankruptcy estate.

**WHEREFORE**, in accordance with 11 U.S.C. §§ 544 and 550, and the Puerto Rico Civil Code, including Articles 1227, 1228, 1243, 1249, and 1251 (P.R. Laws Ann. tit. 31 §§ 3432, 3433, 3492, 3498, and 3512), the Trustee demands judgment against Defendant as follows: (i) determining that the transfers are avoidable; (ii) entering judgment against Defendant for the value of the transfers, plus interest and costs of suit; (iii) entering judgment against Defendant avoiding the transfers; (iv) disallowing any claim Defendant may have against the Debtor's estate unless and until such time as the amounts asserted hereunder are paid as provided in 11 U.S.C. § 502(d), subject to other objections thereto; and (v) for any other relief the Court deems just and proper.

## COUNT IV- DECLARATORY JUDGMENT FOR DAMAGES FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY – 11 U.S.C. §§105(a), 362, FRBP 7001(9)

72.     Plaintiff repeats and reaffirm each of the allegations contained above, as if fully set forth herein at length.

73.     After the Petition Date, Defendant willfully and illegally transferred, withheld, and exercised complete control of the amount of at least $233,239.52 from Plaintiff' property or an escrow account in the accounts held in Defendant's financial institution, despite having full knowledge of the filing of Plaintiff's Chapter 7 voluntary petition[2].

74.     In addition, as of April 9, 2018, approximately thirty (30) days from the Petition Date, Defendant had transferred and withheld transactions, in a total amount of $331,208.00.

75.     Notwithstanding the filing of the Chapter 7 petition and the Trustee's demand for turnover, Oriental ensued in post-petition retentions of Debtors' operational income, obtaining possession and exercising control over property of the estate, thereby affecting Debtors' rights and interest in property as well as the Bankruptcy Estate in clear prejudice to the general unsecured creditors, including employees.

76.     Defendants had knowledge of the Bankruptcy, had appeared and yet continued the series of violations.  Oriental's deviation of funds appears to be to a blocked account, without the Trustee's consent, to channel the funds to such account. Oriental actions post-petition denotes its lack of good faith.

77.     A bankruptcy court may award the corresponding damages to a Debtor for a Defendant's willful violation of the automatic stay under its contempt powers pursuant to 11 U.S.C. §105(a). In this case Debtors are requesting the amount of at least ($233,239.52 + $331,208.00 = $564,447.52), plus costs and attorney's fees.

---

[2] Defendant admitted being in possession of and exercising control over $220,353.35 in an account in the name of the Debtor (the "Withheld Funds"). [Bankruptcy Case No. 17-03403; Dkt. 48, P. 3, ¶ 8]

78.     It is also established that a bankruptcy court has the authority to award sanctions to a creditor for violations of the automatic stay provisions under its equitable powers under damages 105 of the Bankruptcy Code.

**WHEREFORE**, Plaintiff requests that this Court enters a finding that Oriental acted in contempt and violation of the automatic stay provisions and granting actual damages in at least ($233,239.52 + $331,208.00 = $564,447.52) and punitive damages in an amount no less than $500,000.00 plus costs and attorney's fees in favor of Plaintiff.

## COUNT V - OBJECTION TO ORIENTAL'S CLAIM AND AMENDED CLAIM – 11 U.S.C. §105, 363(p)(2), 502, FRBP 3007(b), 7001(2)

79.     Plaintiff repeats and reaffirm each of the allegations contained above, as if fully set forth herein at length.

80.     Oriental claims that pre-petition, it already foreclosed the amount of $900,897.59 in accounts receivables, when it gave notice to Debtor's clients to pay them directly. The Debtor's collection rights were terminated once the Bank demanded direct payments from the clients notified and foreclosed by the Bank.

81.     The total amounts which Oriental Bank has claimed its secured interest is and/or may collect from are as follows:

| | |
|---|---|
| Amounts owed to the Debtor as of March 31, 2017: | $24,154.28[3] |
| Amounts in Debtor's Oriental Bank Account: | $220,353.35 |
| Amounts Foreclosed Pre-Petition: | $916,216.59 |
| Total collected or foreclosed pre-petition: | $1,160,724.22 |

---

[3] There may be more accounts receivables as billings for the months of April and May, 2017 have yet to be posted.

16

82.     Creditor Oriental Bank was not a secured creditor at the time of the filing of the Petition, and any deficiency after the foreclosure of the Accounts Receivables is considered a deficiency unsecured claim. Further, if Oriental has collected over its secured claim, it must turnover to the Bankruptcy Estate the difference between its secured claim and any amount that they received which exceeded its security interest in the amount of $244,507.63.

83.     Therefore, Plaintiff hereby object to Amended Claim #42-2 pursuant to FRBP 3007 for Oriental's pre-petition foreclosure of its alleged security interest prior to the filing of the bankruptcy petition which covers the amount owed to Oriental under the 2016 Credit Facility.

84.     The Trustee prays that any amount remaining in Oriental's account be considered an unsecured deficiency claim.

**WHEREFORE**, Plaintiff requests an Order from this Court disallowing the claims filed by Oriental against Debtors; granting Plaintiff's objection to Claim number 42-2 filed by Oriental for failure to meet its burden of proof over the validity, priority and extent of its alleged lien pursuant to the provisions of 11 U.S.C. §§ 363(p)(2), 502, FRBP 3007.

## COUNT VI - SUBORDINATION OF ORIENTAL'S AMENDED CLAIM UNDER MARSHALLING OF ASSETS– 11 U.S.C. §105(a)

85.     Plaintiff repeats and reaffirm each of the allegations contained above, as if fully set forth herein at length.

86.     The application of the doctrine of Marshalling of Assets is requested through the exercise of the Bankruptcy Court's powers pursuant to 11 USC §105(a). This authority has been ratified in United State v. Energy Resources Co., 495 U.S. 345; S Ct. 2139, 109 L. Ed. 2d 580 (1990), "the statutory directive of section 105(a) is consistent with the traditional understanding that the bankruptcy courts have broad authority to modify creditor-debtor relationships."

87.     Oriental has two funds from which it may collect on its debt, a) the pre-petition foreclosed accounts receivables via notifications to 31 of Debtor's clients amounting to $916,216.594, and b) the unsecured pool of the estate in the liquidation case.

88.     The described amount of $916,216.59 exceeds the secured portion of Oriental's amended claim by $30,668.94 which shows the ample collateral it has to cover the claimed secured portion of its debt. [Bankruptcy Case No. 17-03403, POC#42-2]

89.     Creditor Oriental Bank should be considered unsecured and subordinated to other unsecured creditors on any deficiency upon collections from its pre-petition foreclosed collateral.

90.     As a direct result of Oriental's actions, Debtor's creditors have suffered harm and damages and Oriental's claim and/or any deficiency upon collections should be considered unsecured and equitable subordinated to a position underneath the unsecured creditors under the Marshalling of Assets doctrine.

**WHEREFORE,** Debtor demands this court to order Oriental to marshal assets by proceeding to collect against its non-estate assets, the accounts receivables foreclosed pre-petition, before making claim to the pool of assets available to unsecured creditors. Also, Debtor demands that Oriental's claim be equitably subordinated under the Marshalling of Assets doctrine to receive distribution for any deficiency on collections after general unsecured creditors are paid in full, and all such other and further relief as this Court deems just and proper.

## COUNT VII - EQUITABLE SUBORDINATION

91.     Plaintiff repeats and reaffirm each of the allegations contained above, as if fully set forth herein at length.

---

[4] Oriental claimed that pre-petition, it already foreclosed the amount of $900,897.59 in accounts receivables, when it gave notice to Debtor's clients to pay it directly. However, the aggregate computation of the exhibit provided describing the clients notified and the quantities owed yields a total amount of $916, 216.59. [Bankruptcy Case No. 17-03403, Dkt. 56-1]

92.     Oriental has charged the Debtor for 30% of space that is unusable by a tenant in the Oriental Building. As such, 30% of the rental payments received were charged to the Debtor with no reasonable equivalent in value.

93.     Furthermore, notwithstanding Oriental's inequitable conduct, the Bank purports to charge the estate for the time required to remove equipment post-petition and charge the bankruptcy estate for an impermissible administrative claim of approximately $900,000.

94.     Moreover, Oriental made numerous affirmative representations to Debtor when entering into the 2016 Credit Agreement and less than three months later demanded immediate payment of $407,500 to fix their own mistake in the enactment of the "asset based" revolving line of credit. Less than six months after the execution of the 2016 Credit Agreement, Oriental froze Debtor's funds creating a ripple effect in detriment to Debtors' operations, in prejudice to the Debtor's unsecured creditors and employees.

95.     Oriental's unconscionable, unjust, unfair and foul conduct resulted in injury to the creditors and conferred an unfair advantage on the claimant because they intend to pursue payment of their claim and 100% of their alleged post-petition administrative claim, regardless of their inequitable deceitful conduct.

96.     Oriental actions have affected other creditors including the employees of the Debtor, and these creditors would not have been in this position if it wasn't for Oriental's wrongdoings.

97.     As a direct result of Oriental's actions, Debtor's creditors have suffered harm and damages and Oriental's claim and post-petition administrative claim, if any, should be equitable subordinated to a position underneath all the unsecured creditors.

**WHEREFORE**, Plaintiff demands that Oriental's claim be equitably subordinated to receive distribution after general unsecured creditors are paid in full, and all such other and further relief as this Court deems just and proper.

## COUNT VIII– TURNOVER OF PROPERTY PURSUANT TO 11 U.S.C. § 542

98.     Plaintiff re-alleges and incorporates by reference the allegations of all prior paragraphs of this Complaint.

99.     As alleged in Counts above, the Transfers to Defendant constitute avoidable transfers in the amounts as presented in Exhibit A & B in no less than $13,367,028.40.

100.    Should the Transfers be avoided by the Court, the Trustee may recover the value of such property from Defendant under Sections 544 and 550 of the Bankruptcy Code, and under Articles 1227, 1228, 1243, 1249, and 1251 of the Puerto Rico Civil Code. and 31 L.P.R.A. §§ 3432, 3433, 3492, 3498, and 3512.

101.    Moreover, the Bank has violated the automatic stay and exercises control of property of the estate and has charged over the years 30% rent for spaces that are not fit for tenant occupancy. Defendant should be ordered to turn over such funds to the Trustee.

102.    Defendant is the entity to whom or for whose benefit the Transfers were made.

**WHEREFORE**, the Trustee demands judgment against Defendant as follows: (i) avoiding the Transfers; (ii) allowing the Trustee to recover the value of the property transferred in the amount of the Transfers; (iii) awarding monetary relief in the amount of the Transfers; and (iv) granting such other and further relief as the Court deems just and proper.

## RESERVATION OF RIGHTS

Plaintiff reserves the right: (i) to bring all other claims or causes of action that he may have against Defendant, on any and all grounds, as allowed under the Bankruptcy Code, or applicable

law, or in equity; and (ii) to amend the Complaint as new information becomes known to Plaintiff at any time during the adversary proceeding, through formal discovery or otherwise, to, inter alia, (a) include such information and/or assertions with respect to the Transfers to Defendant, (b) revise Defendant's name, and/or (c) add additional defendants and/or additional causes of action, with all such amendments relating back to the date of the filing of this Complaint.

**WHEREFORE,** based on the foregoing, Plaintiff requests an Order and/or Declaratory Judgment from this Court granting the equitable subordination and/or subordination under the Marshalling of Assets doctrine of Oriental's claim. Plaintiff requests an order granting Plaintiff's objection to Amended Claim #42-2; and declaring Defendant in violation of the automatic stay provisions, totaling a post-petition collected amount of at least $564,447.52 and the inequitable conduct of blocking post-petition access to bank accounts without the Trustee's consent and finding Defendant in contempt of order and granting actual and punitive damages, costs and attorney's fees in favor of the Plaintiff based on the Defendant's willful violation of the automatic stay and for the transfers listed in Exhibit A & B, in an amount no less than $13,367,028.40 and for each of the eight (8) counts encumbered in this complaint.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 15th day of May 2019.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON THIS SAME DATE, I ELECTRONICALLY FILED THE FOREGOING WITH THE CLERK OF THE COURT USING THE CM/ECF SYSTEM, WHICH WILL SEND NOTIFICATION OF SUCH FILING TO ALL CM/ECF PARTICIPANTS.

*/s/ Javier Vilariño*
JAVIER VILARIÑO
USDC NUM. 223503

**VILARIÑO & ASSOCIATES LLC**
PO BOX 9022515
San Juan, PR 00902-2515

Tel. 787-565-9894
E-mail: jvilarino@vilarinolaw.com

**Fiddler, Gonzalez, & Rodriguez. P.S.C ("Debtor")**

Case No.: 17-03403-MCF7
Oriental Bank - Loan Payments

| Date | Description | Check No. | Amount |
|------|-------------|-----------|--------|
| 04/28/14 | Oriental regular - interests on L/C - March 2014 | | 5,743.60 |
| 05/03/14 | Oriental regular - interests on L/C 5/1/14 | | 6,594.50 |
| 05/22/14 | Oriental bank Interests loan - April 2014 | | 5,743.60 |
| 06/02/14 | Oriental Bank - Interests L/C | | 6,381.77 |
| 07/01/14 | Interest Expense - Oriental Regular | | 6,382.00 |
| 08/13/14 | Interest Expense - Oriental Regular | | 6,204.69 |
| 09/10/14 | Interest Expense - Oriental Regular | | 6,411.51 |
| 09/30/14 | Oriental - Interests L/C September 2014 | | 6,860.13 |
| 11/03/14 | Automatic Loan Pay | | 6,558.85 |
| 11/28/14 | Automatic Loan Pay | | 6,777.49 |
| 12/31/14 | Automatic Loan Pay | | 6,558.85 |
| 01/27/15 | Automatic Loan Pay | | 6,777.49 |
| 01/12/15 | Oriental Bank | 693 | 650,000.00 |
| 02/25/15 | Oriental Bank | 701 | 50,000.00 |
| 02/27/15 | Oriental Bank | 702 | 50,000.00 |
| 03/09/15 | Debit Memo - Int Factura Feb Loan 751677 | | 4,929.92 |
| 03/27/15 | Automatic Loan Pay | | 4,958.75 |
| 04/27/15 | Automatic Loan Pay | | 5,679.57 |
| 06/02/15 | Transfer to Loan Account 0000751677 | | 5,496.35 |
| 06/26/15 | Debit Memo - Gastos de Cierre 751677 | | 5,185.00 |
| 06/29/15 | Automatic Loan Pay | | 5,679.57 |
| 07/27/15 | Automatic Loan Pay | | 5,496.36 |
| 08/27/15 | Automatic Loan Pay | | 5,679.57 |
| 09/28/15 | Automatic Loan Pay | | 5,679.57 |
| 10/26/15 | Oriental Bank | 2498 | 25,000.00 |
| 10/27/15 | Automatic Loan Pay | | 5,496.35 |
| 11/10/15 | Oriental Bank | 2653 | 25,000.00 |
| 11/27/15 | Automatic Loan Pay | | 5,534.95 |
| 12/28/15 | Automatic Loan Pay | | 5,602.61 |
| 01/28/16 | Automatic Loan Pay | | 6,753.38 |
| 02/29/16 | Automatic Loan Pay | | 7,163.66 |
| 03/28/16 | Automatic Loan Pay | | 6,713.18 |
| 04/11/16 | Oriental Bank | 3902 | 25,000.00 |
| 04/14/16 | Oriental Bank | 3945 | 25,000.00 |
| 04/27/16 | Automatic Loan Pay | | 7,269.91 |
| 05/17/16 | Oriental Bank | 4181 | 100,000.00 |
| 05/24/16 | Oriental Bank | 4239 | 100,000.00 |
| 05/27/16 | Automatic Loan Pay | | 6,904.05 |
| 08/29/16 | Transfer to Loan Account 0000751677 | | 7,319.67 |
| 09/16/16 | Transfer to Loan Account 0000751677 | | 7,563.66 |
| 09/30/16 | Debit Memo - Gastos de Cierre 751677 | | 523,163.24 |
| 10/28/16 | Payment | | 188,326.67 |
| 10/31/16 | Payment | | 55,379.49 |
| 11/01/16 | Payment | | 45,088.96 |
| 11/02/16 | Payment | | 138,418.32 |
| 11/03/18 | Payment | | 53,608.50 |
| 11/04/16 | Payment | | 17,109.45 |
| 11/07/16 | Payment | | 102,109.23 |
| 11/08/16 | Payment | | 17,199.98 |

GlassRatner Advisory &
Capital Group, LLC

**Exhibit A**

**Fiddler, Gonzalez, & Rodriguez. P.S.C ("Debtor")**

Case No.: 17-03403-MCF7
Oriental Bank - Loan Payments

| Date | Description | Check No. | Amount |
|------|-------------|-----------|--------|
| 11/09/16 | Payment | | 35,420.97 |
| 11/10/16 | Payment | | 46,707.94 |
| 11/14/16 | Payment | | 119,566.55 |
| 11/15/16 | Payment | | 36,895.71 |
| 11/16/16 | Payment | | 65,155.63 |
| 11/17/16 | Payment | | 55,061.33 |
| 11/18/16 | Payment | | 3,755.72 |
| 11/21/16 | Payment | | 58,948.16 |
| 11/22/16 | Payment | | 88,385.10 |
| 11/23/16 | Payment | | 62,766.89 |
| 11/25/16 | Payment | | 29,148.64 |
| 11/27/16 | Automatic Loan Pay | | 5,256.66 |
| 11/28/16 | Payment | | 2,549.99 |
| 11/29/16 | Payment | | 46,107.90 |
| 11/30/16 | Payment | | 62,716.95 |
| 12/01/16 | Payment | | 65,943.91 |
| 12/02/16 | Payment | | 26,227.12 |
| 12/05/16 | Payment | | 49,545.04 |
| 12/06/16 | Payment | | 44,211.21 |
| 12/07/16 | Payment | | 46,283.93 |
| 12/08/16 | Payment | | 13,668.96 |
| 12/09/16 | Payment | | 15,410.65 |
| 12/12/16 | Payment | | 65,979.02 |
| 12/13/16 | Payment | | 48,028.77 |
| 12/14/16 | Payment | | 37,819.09 |
| 12/15/16 | Payment | | 82,512.27 |
| 12/16/16 | Payment | | 52,705.94 |
| 12/19/16 | Payment | | 26,213.95 |
| 12/20/16 | Payment | | 216,285.00 |
| 12/21/16 | Payment | | 145,275.78 |
| 12/22/18 | Payment | | 40,705.37 |
| 12/23/16 | Payment | | 18,595.91 |
| 12/27/16 | Automatic Loan Pay | | 5,048.48 |
| 12/27/16 | Payment | | 33,479.10 |
| 12/28/16 | Payment | | 104,847.70 |
| 12/29/16 | Payment | | 76,109.71 |
| 12/30/16 | Payment | | 56,509.49 |
| 01/03/17 | Payment | | 94,460.20 |
| 01/04/17 | Payment | | 42,707.78 |
| 01/05/17 | Payment | | 26,854.25 |
| 01/06/17 | Payment | | 161,514.37 |
| 01/09/17 | Payment | | 997.33 |
| 01/10/17 | Payment | | 11,349.07 |
| 01/11/17 | Payment | | 89,765.68 |
| 01/12/17 | Payment | | 5,400.42 |
| 01/13/17 | Payment | | 25,217.92 |
| 01/17/17 | Payment | | 5,051.00 |
| 01/18/17 | Payment | | 36,565.81 |
| 01/19/17 | Payment | | 14,036.09 |
| 01/20/17 | Payment | | 42,736.45 |

Exhibit A

**Fiddler, Gonzalez, & Rodriguez. P.S.C ("Debtor")**
Case No.: 17-03403-MCF7
Oriental Bank - Loan Payments

| Date | Description | Check No. | Amount |
|------|-------------|-----------|--------|
| 01/23/17 | Payment | | 15,886.87 |
| 01/24/17 | Payment | | 33,151.85 |
| 01/25/17 | Payment | | 112,070.45 |
| 01/26/17 | Payment | | 12,829.72 |
| 01/27/17 | Automatic Loan Pay | | 4,551.02 |
| 01/27/17 | Payment | | 28,579.49 |
| 01/30/17 | Payment | | 58,860.42 |
| 01/31/17 | Payment | | 33,502.93 |
| 02/01/17 | Payment | | 83,298.38 |
| 02/02/17 | Payment | | 7,819.85 |
| 02/03/17 | Payment | | 25,070.95 |
| 02/06/17 | Payment | | 100,413.30 |
| 02/07/17 | Payment | | 45,520.31 |
| 02/08/17 | Payment | | 55,645.73 |
| 02/09/17 | Payment | | 62,176.41 |
| 02/10/17 | Payment | | 8,738.07 |
| 02/13/17 | Payment | | 54,427.14 |
| 02/14/17 | Payment | | 24,150.41 |
| 02/15/17 | Payment | | 28,811.25 |
| 02/16/17 | Payment | | 20,243.20 |
| 02/17/17 | Payment | | 33,752.50 |
| 02/21/17 | Payment | | 40,857.41 |
| 02/22/17 | Payment | | 53,436.94 |
| 02/23/17 | Payment | | 51,090.22 |
| 02/24/17 | Payment | | 10,865.89 |
| 02/27/17 | Automatic Loan Pay | | 5,782.01 |
| 02/27/17 | Payment | | 47,619.43 |
| 02/28/17 | Payment | | 13,926.05 |
| 03/01/17 | Payment | | 44,550.45 |
| 03/02/17 | Payment | | 63,795.22 |
| 03/03/17 | Payment | | 21,815.78 |
| 03/06/17 | Payment | | 71,215.22 |
| 03/07/17 | Payment | | 17,226.42 |
| 03/08/17 | Payment | | 63,110.22 |
| 03/09/17 | Payment | | 10,843.08 |
| 03/10/17 | Payment | | 16,110.88 |
| 03/13/17 | Payment | | 15,067.94 |
| 03/14/17 | Payment | | 66,208.04 |
| 03/15/17 | Payment | | 53,103.81 |
| 03/16/17 | Payment | | 28,095.29 |
| 03/17/17 | Payment | | 10,930.28 |
| 03/20/17 | Payment | | 40,199.15 |
| 03/21/17 | Payment | | 107,063.33 |
| 03/22/17 | Payment | | 49,978.41 |
| 03/23/17 | Payment | | 2,651.40 |
| 03/24/17 | Payment | | 31,404.50 |
| 03/27/17 | Automatic Loan Pay | | 5,878.00 |
| 03/27/17 | Payment | | 19,127.05 |
| 03/28/17 | Payment | | 28,439.63 |
| 03/29/17 | Payment | | 23,539.28 |

GlassRatner Advisory &
Capital Group, LLC

Exhibit A

**Fiddler, Gonzalez, & Rodriguez. P.S.C ("Debtor")**
**Case No.: 17-03403-MCF7**
**Oriental Bank - Loan Payments**

| Date | Description | Check No. | Amount |
|------|-------------|-----------|--------|
| 03/30/17 | Payment | | 16,017.61 |
| 03/31/17 | Payment | | 73,581.03 |
| 04/03/17 | Payment | | 23,049.55 |
| 04/04/17 | Payment | | 19,056.85 |
| 04/05/17 | Payment | | 9,056.77 |
| 04/06/17 | Payment | | 9,936.73 |
| 04/07/17 | Payment | | 11,705.70 |
| 04/10/17 | Payment | | 11,266.47 |
| 04/11/17 | Payment | | 15,610.02 |
| 04/12/17 | Payment | | 8,901.38 |
| 04/13/17 | Payment | | 13,886.96 |
| 04/14/17 | Payment | | 63,598.91 |
| 04/17/17 | Payment | | 854.73 |
| 04/18/17 | Payment | | 16,283.89 |
| 04/19/17 | Payment | | 38,072.69 |
| 04/20/17 | Payment | | 63,662.84 |
| 04/21/17 | Payment | | 6,614.01 |
| 04/24/17 | Payment | | 8,449.47 |
| 04/25/17 | Payment | | 20,000.00 |
| 04/25/17 | Payment | | 39,232.88 |
| 04/26/17 | Payment | | 20,203.64 |
| 04/27/17 | Automatic Loan Pay | | 4,591.07 |
| 04/27/17 | Payment | | 40,610.70 |
| 04/28/17 | Payment | | 30,926.55 |
| 05/01/17 | Payment | | 99,858.21 |
| 05/02/17 | Payment | | 2,147.66 |
| 05/03/17 | Payment | | 19,937.46 |
| 05/04/17 | Payment | | 44,692.27 |
| 05/05/17 | Payment | | 19,536.40 |
| | **Total** | | **$ 7,543,785.34** |

**Fiddler, Gonzalez & Rodriguez P.S.C. ("Debtor")**

**Case No.: 17-03403-MCF7**

**Four Year Transfers - Commercial Centers Management Realty**

| Date | Check Number | Payee | Amount |
|---|---|---|---|
| 5/22/2013 | 92703 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 5/22/2013 | 92704 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 6/4/2013 | 92857 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 6/24/2013 | 93111 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 6/24/2013 | 93112 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 7/3/2013 | 93198 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 7/22/2013 | 93401 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 7/22/2013 | 93402 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 8/2/2013 | 93564 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 8/7/2013 | 93650 | Commercial Centers Management Realty, S en C | $157.19 |
| 8/22/2013 | 93849 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 8/22/2013 | 93850 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 9/13/2013 | 94153 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 9/25/2013 | 94269 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 9/25/2013 | 94270 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 10/4/2013 | 94445 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 10/24/2013 | 94701 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 10/24/2013 | 94702 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 11/4/2013 | 94868 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 11/25/2013 | 95103 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 11/25/2013 | 95104 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 12/4/2013 | 95225 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 12/23/2013 | 95455 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 12/23/2013 | 95456 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 1/3/2014 | 95634 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 1/23/2014 | 95871 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 1/23/2014 | 95872 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 2/3/2014 | 96037 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 2/25/2014 | 96251 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 2/25/2014 | 96252 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 3/5/2014 | 96355 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 3/25/2014 | 96587 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 3/25/2014 | 96588 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 4/2/2014 | 96660 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 4/25/2014 | 96975 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 4/25/2014 | 96976 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 5/2/2014 | 97075 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 5/23/2014 | 97421 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 5/23/2014 | 97422 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 6/2/2014 | 97521 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 6/25/2014 | 97757 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 6/25/2014 | 97758 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 7/3/2014 | 97891 | Commercial Centers Management Realty, S en C | $7,875.00 |

**Fiddler, Gonzalez & Rodriguez P.S.C. ("Debtor")**

Case No.: 17-03403-MCF7

**Four Year Transfers - Commercial Centers Management Realty**

| Date | Check Number | Payee | Amount |
|---|---|---|---|
| 7/23/2014 | 98095 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 7/23/2014 | 98096 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 8/4/2014 | 98235 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 8/25/2014 | 98405 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 8/25/2014 | 98406 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 9/2/2014 | 98515 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 9/24/2014 | 98755 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 9/24/2014 | 98756 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 10/3/2014 | 98828 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 10/24/2014 | 98964 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 10/24/2014 | 98965 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 11/4/2014 | 99131 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 11/25/2014 | 99326 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 11/25/2014 | 99327 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 12/8/2014 | 99467 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 12/24/2014 | 99629 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 12/24/2014 | 99630 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 12/30/2014 | 99703 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 1/23/2015 | 99893 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 1/23/2015 | 99894 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 2/5/2015 | 100016 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 2/6/2015 | 100021 | Commercial Centers Management Realty, S en C | $2,047.50 |
| 2/25/2015 | 100239 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 2/25/2015 | 100240 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 2/27/2015 | 100367 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 3/25/2015 | 100601 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 3/25/2015 | 100602 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 3/27/2015 | 100648 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 4/24/2015 | 100906 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 4/24/2015 | 100907 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 5/4/2015 | 101032 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 5/20/2015 | 101167 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 5/20/2015 | 101168 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 6/3/2015 | 101272 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 6/23/2015 | 101441 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 6/23/2015 | 101442 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 7/3/2015 | 101550 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 7/21/2015 | 101721 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 7/21/2015 | 101722 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 8/5/2015 | 101884 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 8/25/2015 | 102059 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 8/25/2015 | 102060 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 9/3/2015 | 102173 | Commercial Centers Management Realty, S en C | $7,875.00 |

**Fiddler, Gonzalez & Rodriguez P.S.C. ("Debtor")**

**Case No.: 17-03403-MCF7**

**Four Year Transfers - Commercial Centers Management Realty**

| Date | Check Number | Payee | Amount |
|---|---|---|---|
| 9/22/2015 | 102374 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 9/22/2015 | 102375 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 10/5/2015 | 102444 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 10/23/2015 | 102677 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 10/23/2015 | 102678 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 11/4/2015 | 102809 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 11/25/2015 | 102983 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 11/25/2015 | 102984 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 12/4/2015 | 103033 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 12/24/2015 | 103216 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 12/24/2015 | 103217 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 1/5/2016 | 103311 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 1/22/2016 | 103493 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 1/22/2016 | 103494 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 2/5/2016 | 103609 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 2/22/2016 | 103764 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 2/22/2016 | 103765 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 3/4/2016 | 103872 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 3/24/2016 | 104041 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 3/24/2016 | 104042 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 4/5/2016 | 104123 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 4/8/2016 | 104155 | Commercial Centers Management Realty, S en C | $2,520.00 |
| 4/25/2016 | 104305 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 4/25/2016 | 104306 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 5/3/2016 | 104384 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 5/23/2016 | 104540 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 5/23/2016 | 104541 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 6/3/2016 | 104618 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 6/24/2016 | 104792 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 6/24/2016 | 104793 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 7/5/2016 | 104878 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 7/22/2016 | 104976 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 7/22/2016 | 104977 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 8/5/2016 | 105077 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 8/24/2016 | 105190 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 8/24/2016 | 105191 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 9/2/2016 | 105254 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 9/23/2016 | 105430 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 9/23/2016 | 105431 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 10/5/2016 | 105520 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 10/24/2016 | 105637 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 10/24/2016 | 105638 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 11/4/2016 | 105737 | Commercial Centers Management Realty, S en C | $7,875.00 |

Exhibit B

**Fiddler, Gonzalez & Rodriguez P.S.C. ("Debtor")**

**Case No.: 17-03403-MCF7**

**Four Year Transfers - Commercial Centers Management Realty**

| Date | Check Number | Payee | Amount |
|------|--------------|-------|--------|
| 11/22/2016 | 105856 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 11/22/2016 | 105857 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 12/2/2016 | 105913 | Commercial Centers Management Realty, S en C | $7,875.00 |
| 12/22/2016 | 106032 | Commercial Centers Management Realty, S en C | $18,750.90 |
| 12/22/2016 | 106033 | Commercial Centers Management Realty, S en C | $100,106.00 |
| 1/25/2017 | 106251 | Commercial Centers Management Realty, S en C | $41,213.64 |
| 1/25/2017 | 106251 | Commercial Centers Management Realty, S en C | ($41,213.64) |
| 1/25/2017 | 106252 | Commercial Centers Management Realty, S en C | $83,881.25 |
| 1/25/2017 | 106255 | Commercial Centers Management Realty, S en C | $34,763.64 |
| 1/25/2017 | 106256 | Commercial Centers Management Realty, S en C | $6,450.00 |
| 2/10/2017 | 106380 | Commercial Centers Management Realty, S en C | $6,450.00 |
| 2/24/2017 | 106471 | Commercial Centers Management Realty, S en C | $34,763.64 |
| 2/24/2017 | 106472 | Commercial Centers Management Realty, S en C | $83,881.25 |
| | | **Total** | **$5,823,243.07** |